Sheehan & Associates, P.C.
Spencer Sheehan
505 Northern Blvd Ste 311
Great Neck NY 11021-5101
Telephone: (516) 303-0552
Facsimile: (516) 234-7800
*spencer@spencersheehan.com*

United States District Court
Southern District of New York                                      1:20-cv-00734

| | |
|---|---|
| Lafremia Powell, individually and on behalf of all others similarly situated, | |
| Plaintiff, | |
| - against - | Class Action Complaint |
| Dollar Tree Stores, Inc., | |
| Defendant | |

Plaintiff by attorneys alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1.      Dollar Tree Stores, Inc. ("defendant") manufactures, distributes, markets, labels and sells almondmilk beverages purporting to be flavored only with vanilla under the Dollar Tree Store Brand ("Products").

2.      The Products are available to consumers from Dollar Tree's thousands of retail stores and their website and are sold in cartons of 32 OZ (946 ML).

3.      The relevant front label statements include "Almond," "Vanilla," "Almondmilk" and "Sweetened."



4.     The representations are misleading because the Product does not contain the amount, type, and proportion of vanilla relative to non-vanilla flavor components which is expected based on the front label, as shown by the Product's ingredient list on the side panel and explained below.

**INGREDIENTS:** AlmondMilk (Filtered Water, Almonds), Cane Sugar, contains less than 2% of: Calcium Carbonate, Natural Flavor, Sea Salt, Potassium Citrate, Sunflower Lecithin, Locust Bean Gum, Gellan Gum, Vitamin A Palmitate, Vitamin D2.

I.     Vanilla is Constantly Subject to Efforts at Imitation Due to High Demand

5.     The tropical orchid of the genus Vanilla (*V. planifolia*) is the source of the prized flavor commonly known as vanilla, defined by law as "the total sapid and odorous principles extractable from one-unit weight of vanilla beans."[1]

---

[1] 21 C.F.R. §169.3(c).

6.     Vanilla's "desirable flavor attributes…make it one of the most common ingredients used in the global marketplace, whether as a primary flavor, as a component of another flavor, or for its desirable aroma qualities."[2]

7.     Though the Pure Food and Drugs Act of 1906 ("Pure Food Act") was enacted to "protect consumer health and prevent commercial fraud," this was but one episode in the perpetual struggle against those who have sought profit through sale of imitation and lower quality commodities, dressed up as the genuine articles.[3]

8.     It was evident that protecting consumers from fraudulent vanilla would be challenging, as E. M. Chace, Assistant Chief of the Foods Division of the U.S. Department of Agriculture's Bureau of Chemistry, noted "There is at least three times as much vanilla consumed [in the United States] as all other flavors together."[4]

9.     This demand could not be met by natural sources of vanilla, leading manufacturers to devise clever, deceptive and dangerous methods to imitate vanilla's flavor and appearance.

10.     Today, headlines tell a story of a resurgent global threat of "food fraud" – from olive oil made from cottonseeds to the horsemeat scandal in the European Union.[5]

11.     Though "food fraud" has no agreed-upon definition, its typologies encompass an ever-expanding, often overlapping range of techniques with one common goal: giving consumers less than what they bargained for.

---

[2] Daphna Havkin-Frenkel, F.C. Bellanger, Eds., Handbook of Vanilla Science and Technology, Wiley, 2018.
[3] Berenstein, 412; some of the earliest recorded examples of food fraud include unscrupulous Roman merchants who sweetened wine with lead.
[4] E. M. Chace, "The Manufacture of Flavoring Extracts," Yearbook of the United States Department of Agriculture 1908 (Washington, DC: Government Printing Office, 1909) pp.333–42, 333 quoted in Nadia Berenstein,  "Making a global sensation: Vanilla flavor, synthetic chemistry, and the meanings of purity," History of Science 54.4 (2016): 399-424 at 399.
[5] Jenny Eagle, 'Today's complex, fragmented, global food supply chains have led to an increase in food fraud', FoodNavigator.com, Feb. 20, 2019; M. Dourado et al., Do we really know what's in our plate?. Annals of Medicine, 51(sup1), 179-179 (May 2019); Aline Wisniewski et al., "How to tackle food fraud in official food control authorities in Germany." Journal of Consumer Protection and Food Safety: 1-10. June 11, 2019.

A. <u>Food Fraud as Applied to Vanilla</u>

12.    Vanilla is considered a "high-risk [for food fraud] product because of the multiple market impact factors such as natural disasters in the source regions, unstable production, wide variability of quality and value of vanilla flavorings," second only to saffron in price.[6]

13.    The efforts at imitating vanilla offers a lens to the types of food fraud regularly employed across the spectrum of valuable commodities in today's interconnected world.[7]

| Type of Food Fraud | Application to Vanilla |
|---|---|
| ➢ Addition of markers specifically tested for instead of natural component of vanilla beans | • Manipulation of the carbon isotope ratios to produce synthetic vanillin with similar carbon isotope composition to natural vanilla |
| | • Ground vanilla beans and/or seeds to provide visual appeal as "specks" so consumer thinks the product contains real vanilla beans, when the ground beans have been exhausted of flavor |
| ➢ Appearance of *more* and/or higher quality of the valued ingredient | • Caramel to darken the color of an imitation vanilla so it more closely resembles the hue of real vanilla[8] |
| | • Annatto and turmeric extracts in dairy products purporting to be flavored with vanilla, which causes the color to better resemble the hue of rich, yellow butter |
| ➢ Substitution and replacement of a high | • Tonka beans, though similar in appearance to vanilla beans, are banned from entry to the United States due to |

---

[6] Société Générale de Surveillance SA, ("SGS "), <u>Authenticity Testing of Vanilla Flavors – Alignment Between Source Material, Claims and Regulation</u>, May 2019.
[7] Kathleen Wybourn, DNV GL, <u>Understanding Food Fraud and Mitigation Strategies</u>, PowerPoint Presentation, Mar. 16, 2016.
[8] Renée Johnson, "<u>Food fraud and economically motivated adulteration of food and food ingredients</u>." Congressional Research Service R43358, January 10, 2014.

| quality ingredient with alternate ingredient of lower quality | fraudulent use<br>• Coumarin, a toxic phytochemical found in Tonka beans, added to imitation vanillas to increase vanilla flavor perception |
|---|---|
| ➢ Addition of less expensive substitute ingredient to mimic flavor of more valuable component | • Synthetically produced ethyl vanillin, from recycled paper, tree bark or coal tar, to imitate taste of real vanilla |
| ➢ Compounding, Diluting, Extending | • "to mix flavor materials together at a special ratio in which they [sic] compliment each other to give the desirable aroma and taste"[9]<br>• Combination with flavoring substances such as propenyl guaethol ("Vanitrope"), a "flavoring agent [, also] unconnected to vanilla beans or vanillin, but unmistakably producing the sensation of vanilla"[10]<br>• "Spiking" or "fortification" of vanilla through addition of natural and artificial flavors including vanillin, which simulates vanilla taste but obtained from tree bark |
| ➢ Addition of fillers to give the impression there is more of the product than there actually is | • Injection of vanilla beans with mercury, a poisonous substance, to raise the weight of vanilla beans, alleged in *International Flavors and Fragrances (IFF), Inc. v. Day Pitney LLP and Robert G. Rose,* 2005, Docket Number L-4486-09, Superior Court of New Jersey, Middlesex County |
| ➢ Ingredient List Deception[11] | • Subtle, yet deliberate misidentification and obfuscation of a product's components and qualities as they appear on the |

---

[9] Chee-Teck Tan, "Physical Chemistry in Flavor Products Preparation: An Overview" in Flavor Technology, ACS Symposium Series, Vol. 610 1995. 1-17.

[10] Berenstein, 423.

[11] Recent example of this would be "evaporated cane juice" as a more healthful sounding term to consumers to identify sugar.

ingredient list

- o "ground vanilla beans" gives impression it describes unexhausted vanilla beans when actually it is devoid of flavor and used for aesthetics
- o "natural vanilla flavorings" – "-ing" as suffix referring to something *like* that which is described
- o "Vanilla With Other Natural Flavors" – implying – wrongly – such a product has a sufficient amount of vanilla to characterize the food
- o "Natural Flavors" – containing "natural vanillin" derived not from vanilla beans but from tree pulp. When paired with real vanilla, vanillin is required to be declared as an artificial flavor
- o "Non-Characterizing" flavors which are not identical to vanilla, but that extend vanilla

14.   The "plasticity of legal reasoning" with respect to food fraud epitomize what H. Mansfield Robinson and Cecil H. Cribb noted in 1895 in the context of Victorian England:

the most striking feature of the latter-day sophisticator of foods is his knowledge of the law and his skill in evading it. If a legal limit on strength or quality be fixed for any substance (as in the case of spirits), he carefully brings his goods right down to it, and perhaps just so little below that no magistrate would convict him.

*The law and chemistry of food and drugs*. London: F.J. Rebman at p. 320.[12]

B.   The Use of Vanillin to Simulate Vanilla

15.   The most persistent challenger to the authenticity of real vanilla has been synthetic versions of its main flavor component, vanillin.

16.   First synthesized from non-vanilla sources by German chemists in the mid-1800s,

---

[12] Cited in Sébastien Rioux, "Capitalist food production and the rise of legal adulteration: Regulating food standards in 19th-century Britain," Journal of Agrarian Change 19.1 (2019) at p. 65 (64-81).

vanillin was the equivalent of steroids for vanilla flavor.

17.     According to Skip Rosskam, a professor of vanilla at Penn State University and former head of the David Michael flavor house in Philadelphia, "one ounce of vanillin is equal to a full gallon of single-fold vanilla extract."[13]

18.     Today, only 1-2% of vanillin in commercial use is vanillin obtained from the vanilla plant, which means that almost all vanillin has no connection to the vanilla bean.

19.     Nevertheless, disclosure of this powerful ingredient has always been required where a product purports to be flavored with vanilla. *See* Kansas State Board of Health, Bulletin, Vol. 7, 1911, p. 168 (cautioning consumers that flavor combinations such as "vanilla and vanillin…vanilla flavor compound," etc., are not "vanilla [extract] no matter what claims, explanations or formulas are given on the label.").

20.     Since vanilla is the only flavor with its own standard of identity, its labeling is controlled not by the general flavor regulations but by the standards for vanilla ingredients.

21.     This means that if a product is represented as being characterized by vanilla yet contains non-vanilla vanillin, the label and packaging must declare the presence of vanillin and identify it as an artificial flavor. *See* Vanilla-vanillin extract at 21 C.F.R. § 169.180(b) ("The specified name of the food is 'Vanilla-vanillin extract _-fold' or '_-fold vanilla-vanillin extract', followed immediately by the statement 'contains vanillin, an artificial flavor (or flavoring)'."); *see also* 21 C.F.R. § 169.181(b), § 169.182(b) (similar declarations required for Vanilla-vanillin flavoring and Vanilla-vanillin powder).

22.     This prevents consumers from being misled by products which may taste similar to real vanilla and but for consumer protection requirements, would be sold at the price of real vanilla.

---

[13] Katy Severson, Imitation vs. Real Vanilla: Scientists Explain How Baking Affects Flavor, Huffington Post, May 21, 2019.

C.  Production of "Natural Vanillins" Combined with "Natural Vanilla"

23.    The past ten years have seen many vanillins purporting to be a "natural flavor" – derived from a natural source material which undergoes a natural production process.

24.    However, "natural vanillin" is not a "natural vanilla flavor" because the raw material is typically from petrochemicals or tree pulp instead of vanilla beans.

25.    The two main natural sources of vanillin are ferulic acid and eugenol, from cloves.

26.    Ferulic acid is converted to vanillin through a natural fermentation process, but this method is cost prohibitive for almost all applications.

27.    Thus, when a product uses "natural vanillin," it is a certainty it is made from eugenol, which was deemed by the FDA to be considered a "natural flavor," due to its manufacturer claiming it is derived by a natural process.

28.    Since this conversion occurs in China with no transparency or verification, regulators and consumers are not told that the production method is a chain of chemical reactions which would more accurately describe an artificial flavor.

II.    Flavor Industry's Efforts to Use Less Vanilla, Regardless of any Shortages

29.    The "flavor industry" refers to the largest "flavor houses" such as Symrise AG, Firmenich, Givaudan, International Flavors and Fragrances (including David Michael), Frutarom and Takasago International along with the largest food manufacturing companies such as Unilever.

30.    The recent global shortage of vanilla beans has provided the flavor industry another opportunity to "innovate[ing] natural vanilla solutions…to protect our existing customers."[14]

31.    Their "customers" do not include the impoverished vanilla farmers nor consumers, who are sold products labeled as "vanilla" for the same or higher prices than when those products

---

[14] Amanda Del Buouno, Ingredient Spotlight, Beverage Industry, Oct. 3, 2016.

contained *only* vanilla.

32.   These efforts include (1) market disruption and manipulation and (2) the development of alternatives to vanilla which completely or partially replace vanilla.

A.   Flavor Industry's Attempt to Disrupt Supply of Vanilla to Create a "Permanent Shortage"

33.   The flavor industry has developed schemes such as the "Sustainable Vanilla Initiative" and "Rainforest Alliance Certified," to supposedly assure a significant supply of vanilla at stable, reasonable prices.

34.   Contrary to promoting "sustainability" of vanilla, these programs make vanilla less "sustainable" by paying farmers to destroy their vanilla crops under the pretense of "crop diversification" to the ubiquitous palm oil.

35.   There have also been allegations that Unilever's Rainforest Alliance Certified Program uses child and/or slave labor and is partially responsible for the imprisonment of children.

36.   Other tactics alleged to be utilized by these companies include "phantom bidding," where saboteurs claim they will pay a higher price to small producers, only to leave the farmers in the lurch, forced to sell at bottom dollar to remaining bidders.[15]

37.   The reasons for these counterintuitive actions is because they benefit from high vanilla prices and the use of less real vanilla.

38.   When less vanilla is available, companies must purchase the higher margin, proprietary, "vanilla-like" flavorings made with advanced technology and synthetic biology.

B.   Use of Vanilla WONF Ingredients to Replace and Provide Less Vanilla

39.   Though flavor companies will not admit their desire to move off real vanilla, this

---

[15] Monte Reel, The Volatile Economics of Natural Vanilla in Madagascar, Bloomberg.com, Dec. 16, 2019.

conclusion is consistent with the comments of industry executives.

40.     According to Suzanne Johnson, vice president or research at a North Carolina laboratory, "Many companies are trying to switch to natural vanilla with other natural flavors [WONF] in order to keep a high-quality taste at a lower price," known as "Vanilla WONF."

41.     The head of "taste solutions" at Irish conglomerate Kerry urged flavor manufacturers to "[G]et creative" and "build a compounded vanilla flavor with other natural flavors."

42.     A compounded vanilla flavor "that matches the taste of pure vanilla natural extracts" can supposedly "provide the same vanilla taste expectation while requiring a smaller quantity of vanilla beans. The result is a greater consistency in pricing, availability and quality."[16]

43.     These compounded flavors exist in a "black box" with "as many as 100 or more flavor ingredients," including potentiators and enhancers, like maltol and piperonal, blended together to enhance the vanilla, allowing the use of less vanilla to achieve the intended taste.[17]

44.     The effort to replace vanilla with so-called Vanilla WONF started in the late 1960s, but the last 10 years have seen the proliferation of this ingredient.

C.   Decline of Industry Self-Governance

45.     That high level executives in the flavor industry are willing to boast of their stratagems to give consumers less vanilla for the same or greater price is not unexpected.

46.     The once powerful and respected trade group, The Flavor and Extract Manufacturers Association ("FEMA"), abandoned its "self-policing" of misleading vanilla labeling claims and disbanding its Vanilla Committee.

---

[16] Donna Berry, Understanding the limitations of natural flavors, BakingBusiness.com, Jan. 16, 2018.
[17] Hallagan and Drake, FEMA GRAS and U.S. Regulatory Authority: U.S. Flavor and Food Labeling Implications, Perfumer & Flavorist, Oct. 25, 2018; Charles Zapsalis et al., *Food chemistry and nutritional biochemistry*. Wiley, 1985, p. 611 (describing the flavor industry's goal to develop vanilla compound flavors "That *Seem*[s] to be Authentic or at Least Derived from a Natural Source") (emphasis added).

47.     FEMA previously opposed industry efforts to deceive consumers, but cast the public

to the curb in pursuit of membership dues from its largest members, such as Unilever.

III.     Designating Flavors and Ingredients in Products Represented as "Vanilla"

    A.   <u>Front Label Designation of Flavors</u>

48.     Where a food makes any representations as to its primary flavor, it must be

designated in a way which is truthful and not misleading.

49.     The factors relevant include (1) the presence of "natural flavor," and/or "artificial

flavor," (2) whether the natural and artificial flavor simulates, resembles or reinforces the

characterizing flavor, (3) whether the natural flavor is obtained from the food ingredient

represented as the characterizing flavor – i.e., does the peach flavor come from real peaches or is

it synthesized from apricots? and (4) the relative amounts of the different flavor types.  *See* 21

C.F.R. § 101.22(i)(1)(i)-(iii), 21 C.F.R. § 101.22(i)(2).

50.     "Natural flavor" refers to "the essential oil, oleoresin, essence or extractive…which

contains the flavoring constituents" from a natural source such as plant material and can refer to

combinations of natural flavors. *See* 21 C.F.R. § 101.22(a)(3).

51.     "Artificial flavor" is any substance whose function is to impart flavor that is not

derived from a natural source.  *See* 21 C.F.R. § 101.22(a)(1).

52.     A product labeled "Vanilla _____" gives the impression that all the flavor (taste

sensation and ingredient imparting same) in the product is contributed by the characterizing food

ingredient of vanilla beans. *See* 21 C.F.R. § 101.22(i)(1) (describing a food which contains no

simulating artificial flavor and not subject to 21 C.F.R. § 101.22(i)(1)(i)-(iii)).

53.     The absence of the term "flavored" where a food is labeled "Vanilla" gives

consumers the impression the food contains a sufficient amount of vanilla to characterize the food.

54.    If a product contains an "amount of characterizing ingredient [vanilla] insufficient to independently characterize the food," it would be required to be labeled as "Vanilla flavored _____" or "natural vanilla flavored _____ ." *See* 21 C.F.R. § 101.22(i)(1)(i).

55.    Where a product contains a "characterizing flavor from the product whose flavor is simulated and other natural flavor which simulates, resembles or reinforces the characterizing flavor," the front label would be required to state "with other natural flavor." *See* 21 C.F.R. § 101.22(i)(1)(iii) ("the food shall be labeled in accordance with the introductory text and paragraph (i)(1)(i) of this section and the name of the food shall be immediately followed by the words "with other natural flavor"").

56.    If the amount of the characterizing flavor is sufficient to independently characterize the food, the front label would be required to state "[Name of Characterizing Flavor] With Other Natural Flavor." *See* 21 C.F.R. § 101.22(i)(1)(iii); *see also* 21 C.F.R. § 101.22(i)(1) ("introductory text" describing scenario where food contains "no artificial flavor which simulates, resembles or reinforces the characterizing flavor," and none of the sub-paragraphs of 21 C.F.R. § 101.22(i)(1) apply).

57.    If the amount of the characterizing flavor is insufficient to independently characterize the food, the front label would be required to state "[Name of Characterizing Flavor] Flavored With Other Natural Flavor." *See* 21 C.F.R. § 101.22(i)(1)(iii) referring to "paragraph (i)(1)(i) of this section," 21 C.F.R. § 101.22(i)(1)(i).

B.   Listing Flavors on the Ingredient List in Flavors

58.    A WONF flavor is delivered to a manufacturer "in one package," as a combination of flavors.

59.    This combination contributes to (1) ease of use by managing fewer suppliers, (2)

ensuring the flavors complement and enhance each other, (3) the ability to use less of the more expensive flavor and (4) consistency within product batches.

60.   A WONF flavor is required to be labeled as "natural flavor." *See* 21 C.F.R. § 101.22(h)(1) ("Spice, natural flavor, and artificial flavor may be declared as "spice", "natural flavor", or "artificial flavor", or any combination thereof, as the case may be.").

61.   Where a product is labeled with an unqualified "Vanilla" and the ingredient list contains a single flavoring ingredient of "Natural Flavor," this ingredient refers to the ingredient known as "Vanilla With Other Natural Flavor."

62.   It does not make sense for a product such as a vanilla almondmilk to contain vanilla blended with strawberry flavor.

63.   If an exclusively vanilla ingredient had been used in a product, it would be listed on the ingredient list by its common or usual name provided by its standard of identity. *See* 21 C.F.R. § 169.175(b)(1) ("The specified name of the food is 'Vanilla extract' or 'Extract of vanilla'."); *see also* 21 C.F.R. § 169.177(b) ("The specified name of the food is 'Vanilla flavoring.'").

IV.   Vanilla Flavoring Combinations

64.   Three types of vanilla flavor combinations are mainly used in products labeled as vanilla.

65.   The first kind contains high amounts of "natural vanillin."

66.   The second kind contains less noticeably potent additives and enhancers.

67.   The third kind contains "natural vanillin" and additives and enhancers

A.   Vanilla WONF with Natural Vanillin

68.   Where a product contains vanilla WONF, it is usually identified on ingredient lists as "natural flavor," but sometimes incorrectly and deceptively as "Vanilla Flavor With Other

Natural Flavor."

69.   A product labeled only as "vanilla" but flavored with vanilla WONF is misleading due to not disclosing the presence of the "other natural flavors" because these flavors "simulate[s], resemble[s] or reinforce[s] the characterizing flavor" of vanilla. *See* 21 C.F.R. § 101.22(i)(1)(iii).

70.   Assuming this vanilla WONF contains added vanillin, the correct front label designation would be "Vanilla-vanillin extract, contains vanillin, an artificial flavor" or Vanilla with Artificial Vanilla Flavor, since vanillin has always been artificial when compared with real vanilla. *See* Vanilla-vanillin extract at 21 C.F.R. § 169.180(b) ("The specified name of the food is 'Vanilla-vanillin extract _-fold' or '_-fold vanilla-vanillin extract', followed immediately by the statement 'contains vanillin, an artificial flavor (or flavoring)'.").

B.   <u>Vanilla Combined with "Non-Characterizing" and "Masking" Components</u>

    i.   <u>Pairing "Non-Characterizing" Components with Vanilla is Insufficient for Failing to Disclose these Non-Vanilla Flavors to Consumers</u>

71.   A well-known effort at circumventing the law to deceive consumers was the development of *Vanguard* in the late 1970s by David Michael & Co., Inc., currently part of International Flavors & Fragrances ("IFF").

72.   Supposedly reacting to vanilla shortages, David Michael developed a "flavorless" "natural flavor enhancer" that "contain[ed] no vanilla, vanillin, ethyl vanillin, or any artificial flavor" but reduced the amount of real vanilla by up to half.

73.   This self-described "non-characterizing" flavor was a "blend[s] of dozens of plant extractives, roots, and botanicals, all natural ingredients found on the GRAS list."

74.   Described as part of a "flavor system," David Michael advised its customers that a product made with *Vanguard* would state "vanilla extract [or flavor], natural flavor" on the ingredient list.

75.     The front label would supposedly only need to state "Vanilla" because the non-vanilla natural flavor was claimed to not resemble or simulate vanilla.

ii.     Use of "Non-Characterizing" Natural Flavors in Vanilla is Deceptive and Misleading

76.     Where a product is labeled as "vanilla" and its ingredient list separately declares "vanilla flavor" or "vanilla extract" and "natural flavor," it is prima facie evidence of the use of a purported non-characterizing flavor in addition to an exclusively vanilla ingredient.

77.     However, in determining the relationship between an added flavor and a characterizing natural flavor, the test is not solely whether the flavor simulates or is chemically identical to the characterizing flavor, but also whether it resembles, reinforces or extends it.

78.     Even if a "natural flavor" used with a vanilla flavor is not a "vanilla-like" flavor, it is still capable of, and does effect, the amount of vanilla used.

79.     The non-vanilla components of this type of "natural flavor" include GRAS additives like piperonal, maltol and heliotropin, which potentiate, enhance and extend vanilla.

80.     The marketing materials for these flavor systems describe them as "vanilla replacers" – which allow for a food to have use less vanilla yet have the same or greater vanilla taste.

81.     It is implausible to suggest that a "non-characterizing" "natural flavor" can enable the same level of vanilla taste through use of less real vanilla, yet have no relationship with vanilla.

82.     This flavor by definition extends the characterizing flavor through making less of it provide a larger sensory effect.

83.     This means that a "Natural Flavor" claimed to be "non-characterizing" would need to be accounted for on the front label of such a food.

iii.     Alternative Explanation Describing Non-Vanilla "Natural Flavor" as a "Masking Flavor" is also Deceptive

84. A non-vanilla natural flavor in a product labeled only as vanilla may sometimes be deceptively described as (1) a "masking flavor" which blocks or limits a negative taste sensation caused by other ingredients or (2) as "rounding out" harsher notes and ancillary flavors.

85. Masking flavors are claimed to work "in the background with the characterizing notes, elevating them to their true potential" and "subdu[ing] off flavors from other ingredients…allowing the characterizing flavor to shine."[18]

86. However, a non-vanilla "masking" flavor creates the impression the food contains more vanilla, requiring disclosure on the front label. *See* 21 C.F.R. § 101.22(i)(1)(iii) ("other natural flavor which simulates, resembles or reinforces the characterizing flavor").

iv. A Flavor System Which Contains "Vanilla, Natural Flavor" is Misleading because these Ingredients are Designed to Work Together and their Separation is Intended to Deceive

87. Companies know consumers value seeing vanilla extract or vanilla flavoring on an ingredient list.

88. Vanilla extract and vanilla flavor(ing) are high value ingredients which consumers are familiar with and know what is in it.

89. Natural flavor is a technical, non-transparent term which allows its components to be kept secret.

90. The ubiquity of "natural flavor" – in almost every food and beverage available – is synonymous with a laboratory-created, mass produced, low value ingredient.

91. Even though the Products contain "natural flavor," the presence of "vanilla flavor" is a net positive when appealing to consumers.

---

[18] Donna Berry, Modifying Flavor in Dairy Foods, April 11, 2018, Food Business News.

V. The Product's Representations are Misleading Because the Product Contains Non-Vanilla Flavor and/or Components Which Enhance, Resemble and Extend the Vanilla

92.     The Product is required to be labeled consistent with the flavor regulations in 21 C.F.R. §101.22.

93.     The front label statements and/or images of "Vanilla" are understood by consumers to identify a product where (1) vanilla is the characterizing flavor, (2) vanilla is contained in a sufficient amount to flavor the product, (3) the flavor is provided by an exclusively vanilla ingredient, (4) no other flavors simulate, resemble, reinforce, enhance or extend the flavoring from vanilla such that less real vanilla is needed and (5) vanilla is the exclusive source of flavor.

A.  Ingredient List Declaration of "Natural Flavor" Reveals Flavor is Not Exclusively Vanilla

94.     The unqualified, prominent and conspicuous representation as "Vanilla" is false, deceptive and misleading because the Product contains flavoring other than vanilla.

Ingredient List

INGREDIENTS: Almondmilk (Filtered Water, Almonds), Cane Sugar, contains less than 2% of: Calcium Carbonate, Natural Flavor, Sea Salt, Potassium Citrate, Sunflower Lecithin, Locust Bean Gum, Gellan Gum, Vitamin A Palmitate, Vitamin D2.

95.     The Product's "Natural Flavor" consists of non-vanilla components which simulates, resembles, extends or reinforces the characterizing flavor, yet this is not disclosed on the front

label.

96.    For the reasons described above, such explanations are false and misleading to consumers.

97.    The Product's front label flavor designation of "Vanilla" fails to disclose the presence of these non-vanilla flavorings, i.e., Vanilla Flavored Almond Beverage, Vanilla Almond Beverage With Other Natural Flavors, etc., which is deceptive to consumers.

VI.    Conclusion

98.    Defendant's branding and packaging of the Products are designed to – and do – deceive, mislead, and defraud consumers.

99.    The amount of vanilla has a material bearing on price or consumer acceptance of the Products by causing consumers to purchase and pay more for the Products.

100.    Had plaintiff and class members known the truth, they would not have bought the Products or would have paid less for it.

101.    Defendant's false, deceptive, and misleading branding and packaging of the Product has enabled defendant to sell more of the Products and at higher prices per unit, than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

102.    The value of the Product that plaintiff actually purchased and consumed was materially less than its value as represented by defendant.

103.    Had plaintiff and class members known the truth, they would not have bought the Products or would have paid less for it.

104.    The Product contains other representations which are misleading and deceptive.

105.    As a result of the false and misleading labeling, the Product is sold at a premium price, approximately no less than $1.00 per unit, excluding tax, compared to other similar products

represented in a non-misleading way.

## Jurisdiction and Venue

106.  Jurisdiction is proper pursuant to 28 U.S.C. § 1332(d)(2) (Class Action Fairness Act of 2005 or "CAFA").

107.  Under CAFA, district courts have "original federal jurisdiction over class actions involving (1) an aggregate amount in controversy of at least $5,000,000; and (2) minimal diversity[.]" *Gold v. New York Life Ins. Co.*, 730 F.3d 137, 141 (2d Cir. 2013).

108.  Upon information and belief, the aggregate amount in controversy is more than $5,000,000.00, exclusive of interests and costs.

109.  This is a reasonable assumption because the Products are sold in stores across the nation and have been sold bearing the allegedly misleading claims for several years.

110.  Plaintiff is a citizen of New York.

111.  Defendant is a Virginia corporation with a principal place of business in Chesapeake, Chesapeake City County, Virginia and is a citizen of Virginia.

112.  This court has personal jurisdiction over defendant because it conducts and transacts business, contracts to provide and/or supply and provides and/or supplies services and/or goods within New York.

113.  Venue is proper because plaintiff and many class members reside in this District and defendant does business in this District and State.

114.  A substantial part of events and omissions giving rise to the claims occurred in this District.

## Parties

115.  Plaintiff is a citizen of Bronx, Bronx County, New York.

116.   Defendant Dollar Tree Stores, Inc. is a Virginia corporation with a principal place of business in Chesapeake, Virginia, Chesapeake City County.

117.   During the relevant statutes of limitations, plaintiff purchased the Product for personal consumption within this district and/or State.

118.   Plaintiff paid more for the Product than she otherwise would have if the Product did not have the misleading representations.

119.   Plaintiff paid a premium price for the Product because prior to purchase, plaintiff saw and relied on the misleading representations.

120.   Plaintiff would purchase the Product again if she were assured the representations were no longer misleading.

<u>Class Allegations</u>

121.   The classes will consist of all consumers in New York, the other 49 states and a nationwide class where applicable.

122.   Common questions of law or fact predominate and include whether defendant's representations and practices were likely to harm plaintiff and if plaintiff and class members are entitled to damages.

123.   Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive actions.

124.   Plaintiff is an adequate representative because her interests do not conflict with other members.

125.   No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

126.   Individual actions would risk inconsistent results, be repetitive and are impractical

to justify, as the claims are modest relative to the scope of the harm.

127.  Plaintiff's counsel is competent and experienced in complex class action litigation and intends to adequately and fairly protect class members' interests.

128.  Plaintiff seeks class-wide injunctive relief because the practices continue.

<u>New York GBL §§ 349 & 350</u>
<u>(Consumer Protection from Deceptive Acts)</u>

129.  Plaintiff incorporates by reference all preceding paragraphs.

130.  Plaintiff and class members desired to purchase products which were as described by defendant and expected by reasonable consumers, given the product type.

131.  Defendant's acts and omissions are not unique to the parties and have a broader impact on the public.

132.  Defendant's conduct was misleading, deceptive, unlawful, fraudulent, and unfair because it gives the impression to consumers the Products to contain sufficient amounts of the highlighted ingredient, vanilla, to independently characterize the taste or flavor of the Products, did not contain other flavor components which simulate, resemble or reinforce the characterizing flavor and only contained flavor from vanilla.

133.   Plaintiff  and class members would not have purchased the Products or paid as much if the true facts had been known, suffering damages.

<u>Negligent Misrepresentation</u>

134.  Plaintiff incorporates by reference all preceding paragraphs.

135.  Defendant misrepresented the substantive, quality, compositional, organoleptic and/or nutritional attributes of the Products through representing they contain sufficient amounts of the highlighted ingredient, vanilla, to independently characterize the taste or flavor of the Products, did not contain other flavor components which simulate, resemble or reinforce the

characterizing flavor and only contained flavor from vanilla.

136.   Defendant had a duty to disclose and/or provide non-deceptive labeling of the Product and its components and ingredients, and knew or should have known same were false or misleading.

137.   This duty is based on defendant's position as an entity which has held itself out as having special knowledge and experience in the production, service and/or sale of the product or service type.

138.   The representations took advantage of consumers' (1) cognitive shortcuts made at the point-of-sale and (2) trust placed in defendant, a well-known and respected brand in this sector.

139.   Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, the purchase of the Products.

140.   Plaintiff and class members would not have purchased the Products or paid as much if the true facts had been known, suffering damages.

<u>Breaches of Express Warranty, Implied Warranty of Merchantability and<br>Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.</u>

141.   Plaintiff incorporates by reference all preceding paragraphs.

142.   Defendant manufactures and sells products which purportedly contain sufficient amounts of the highlighted ingredient, vanilla, to independently characterize the taste or flavor of the Products, did not contain other flavor components which simulate, resemble or reinforce the characterizing flavor and only contained flavor from vanilla.

143.   The Products warranted to plaintiff and class members that they possessed substantive, functional, nutritional, qualitative, compositional, organoleptic, sensory, physical and other attributes which they did not.

144.   Defendant had a duty to disclose and/or provide a non-deceptive description and identification of the Product.

145.   This duty is based, in part, on defendant's position as one of the most recognized companies in the nation in this sector.

146.   Plaintiff provided or will provide notice to defendant, its agents, representatives, retailers and their employees.

147.   Defendant had received or should have been aware of the misrepresentations due to numerous complaints by consumers to its main office over the past several years.

148.   The Product did not conform to its affirmations of fact and promises due to defendant's actions and were not merchantable.

149.   Plaintiff and class members relied on the claims, paying more than they would have.

<u>Fraud</u>

150.   Plaintiff incorporates by references all preceding paragraphs.

151.   Defendant's purpose was to sell products that contain sufficient amounts of the highlighted ingredient, vanilla, to independently characterize the taste or flavor of the Products, did not contain other flavor components which simulate, resemble or reinforce the characterizing flavor and only contained flavor from vanilla.

152.   Defendant's fraudulent intent is evinced by its failure to accurately identify the Product on the front label.

153.   Plaintiff and class members observed and relied on defendant's claims, causing them to pay more than they would have, entitling them to damages.

<u>Unjust Enrichment</u>

154.   Plaintiff incorporates by reference all preceding paragraphs.

155. Defendant obtained benefits and monies because the Products were not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

 **WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, restitution and disgorgement for members of the State Subclasses pursuant to the applicable laws of their States;

4. Awarding monetary damages and interest, including treble and punitive damages, pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated:   January 27, 2020

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
Spencer Sheehan
505 Northern Blvd Ste 311
Great Neck NY 11021-5101
Telephone: (516) 303-0552
Facsimile: (516) 234-7800

24

*spencer@spencersheehan.com*
E.D.N.Y. # SS-8533
S.D.N.Y. # SS-2056

1:20-cv-00734
United States District Court
Southern District of New York

Lafremia Powell, individually and on behalf of all others similarly situated,

Plaintiff,

- against -

Dollar Tree Stores, Inc.,

Defendant

## Class Action Complaint

```
Sheehan & Associates, P.C.
 505 Northern Blvd Ste 311
 Great Neck NY 11021-5101
    Tel: (516) 303-0552
    Fax: (516) 234-7800
```

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated:  January 27, 2020

/s/ Spencer Sheehan
Spencer Sheehan